In re the MARRIAGE OF Patricia E.
PRING, Appellant,

and

John Edward Pring, Appellee.

No. 86CA0087.

Colorado Court of Appeals,
Div. III.

July 23, 1987.

Isaac, Johnson and Alpern, Howard J. Alpern, Mark L. Finlayson, Colorado Springs, for appellant.

Law Offices of Gary F. Dailey, Gary F. Dailey, Colorado Springs, for appellee.

KELLY, Judge.

After a hearing on the motion of Patricia Pring (mother) to increase a prior child support order requiring John Pring (father) to pay $200 per month per child, the trial court denied the motion, ruling that funds given to the minor children by their maternal grandmother must be depleted before the court would require the father to provide additional support for payment of the children's college education expenses. On appeal by mother, we conclude that the trial court erred, and we therefore reverse.

The marriage of the parties was dissolved in January 1976, and they thereafter entered into a stipulation providing for the division of their property and the custody and support of their children. This stipulation was approved and adopted by the trial court.

After the hearing on mother's motion, the trial court made no findings concerning the parties' changed circumstances, but it was uncontroverted that the financial status of both parties had changed substantially, and the parties stipulated that there had been an inflation factor of 90.55%. The gross monthly income of the mother had increased from $90 per month at the time of the dissolution to $3680 at the date of the hearing; that of the father had increased from $546 to over $7000 per month. The mother reported in her financial affidavit monthly living expenses of $5428 at the time of the motion for modification, of which $3805 monthly was attributable to the children's support and education.

Both parties owned valuable real property interests and other assets, but it was uncontroverted that, so long as father contributed only $200 per month per child to-

ward support, the mother would be required either to invade her assets or expend the moneys given to the children by their maternal grandmother in order to cover educational expenses. At the time of the hearing, there remained a fund from the moneys given by the grandmother of approximately $15,000 for the parties' son and $25,000 for the daughter, who was then two years away from her college matriculation.

The provisions of the parties' stipulation concerning support required the father to pay $200 per month per child until the children attained the age of twenty-one or became emancipated. Although the stipulation acknowledged the children's need for an education, there were no express provisions for the payment of the expenses related thereto. Rather, the "parties agree[d] to consult with one another concerning the type of education their children should receive and agree[d] to assist their children in financing such education if the parties agree such assistance would be appropriate." The parties did not agree, even though their children showed extraordinary intellectual ability and artistic talent.

At the hearing on the motion, the father expressed the view that the children "could work during the summer months and provide at least a thousand dollars towards their education per year." He further opined that funds given by the children's maternal grandmother for their education should be used for college expenses and were sufficient to meet those expenses without further contribution from him. These funds given by the maternal grandmother were characterized by the children's mother as having been given to the children "in a trust" under the "Uniform Gift Tax."

In denying the mother's motion for modification, the trial court ruled that there was no need to change the previous order because of the assets available to the children. The court observed that, when these "separate funds" became depleted, the parties should plan on splitting the college expenses, but until that time, a motion for modification "is not well-founded." The

mother argues that the trial court erred in entering this order. We agree.

## I.

The mother first contends that the grandmother's gift was made pursuant to the Colorado Uniform Transfers to Minors Act, § 11–50–101, et seq., C.R.S. (1986 Cum.Supp.), which provides in § 11–50–115(3) that: "A delivery, payment, or expenditure under this section is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor." Thus, argues the mother, the gift from the grandmother may not be considered by the trial court in deciding a motion to modify a prior child support order.

■ We decline to consider the argument. There is no evidence in the record to show that the grandmother's gifts qualify under either the Colorado Uniform Transfers to Minors Act, cited above, or under its predecessor, the Colorado Uniform Gifts to Minors Act, § 11–50–101, et seq., C.R.S. Moreover, the argument was not made in the trial court, and the trial court did not rule on the statute's applicability when it denied the mother's motion. Hence, we do not regard the issue as properly before us.

## II.

The mother also argues that the trial court improperly weighed the relevant factors set out in § 14–10–115(1), C.R.S., in denying her motion. We agree.

■ A trial court may modify an award of child support "only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 14–10–122(1), C.R.S. There is a heavy burden of proof on the party who seeks modification of a child support order under this statute. In deciding whether the terms of a dissolution decree have become unconscionable, a trial court should consider and apply the criteria listed in § 14–10–115(1), C.R.S. *In re Marriage of Hughes*, 635 P.2d 933 (Colo.App. 1981).

■ These relevant statutory factors are: (a) The financial resources of the

child; (b) the financial resources of the custodial parent; (c) the standard of living the child would have enjoyed had the marriage not been dissolved; (d) the physical and emotional condition of the child and his educational needs; and (e) the financial resources and needs of the noncustodial parent. The trial court considered only the first factor, and failed to consider any of the remaining factors. Where, as here, there is uncontroverted direct evidence and necessary inferences therefrom as to each of the statutory factors, it is error as a matter of law to refuse to consider such evidence.

Undeniably both parents here are financially affluent. The mother, however, is unemployable because of uncontrollable diabetes, and must depend upon investment income for her own and the children's support. The father, on the other hand, has in excess of $3000 per month of discretionary income after payment of his debts and monthly expenses, and has no family obligations whatever, other than the $400 per month child support payments. The trial court itself stated that, absent the children's resources from the grandmother, the parents should expect to share equally in the payment of the college expenses. The court said, however, that the motion for modification is premature prior to depletion of the children's funds. In so doing, the trial court completely ignored the requirements of § 14–10–115(1)(b), (c), and (e).

Moreover, the practical difficulty with the trial court's ruling is that it requires the minor children to expend all of their own resources during the only period when the parents are legally responsible for their educational needs. Because most children do not complete their undergraduate college educations until after they have reached majority, the children are likely to be without funds to complete their education at the very time when their parents cannot be ordered to assist them.

Section 14–10–122(3), C.R.S., provides in part that: "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child...." Unless there is a showing that an adult child is physically or mentally incapable of self-support, parents have no legal obligation to support their children beyond the age of twenty-one years. *Koltay v. Koltay*, 667 P.2d 1374 (Colo.1983). A child who has voluntarily elected to attend college after reaching the age of majority is not under such a disability, however. *In re Marriage of Plummer*, 735 P.2d 165 (Colo.1987).

It follows that the trial court here was mistaken in its assumption that it would have the authority to order the father to contribute to the children's education at any time after they had exhausted their independent resources. No such authority exists if the children have already reached the age of twenty-one when their funds are gone. Section 14–10–115(1)(d) imposes the duty on the trial court to consider such matters in weighing the evidence presented to support a motion for modification.

Where, as here, the noncustodial parent has ample resources with which to contribute to his children's education, and their ability to acquire and their need for an education are established by the evidence, we hold that it is error as a matter of law to fail to weigh the evidence giving due consideration and thought to all of the statutory factors. Hence, the trial court erred in requiring these children to exhaust their own assets for educational purposes before requiring either parent to contribute to their education.

The other arguments of mother are without merit.

The order is reversed and the cause is remanded to the trial court to hold further hearing, if it deems it necessary, and to enter an order requiring the father to pay an appropriate sum per month for the support and education of the minor children under the guidelines stated herein.

TURSI and CRISWELL, JJ., concur.